254 So.2d 603 (1971)
259 La. 1122
Elizabeth Lucille Bradford FULCO, Defendant in Custody Rule-Relator,
v.
Frank FULCO, Jr., Plaintiff in Custody Rule-Respondent.
No. 51367.
Supreme Court of Louisiana.
November 8, 1971.
Rehearing Denied December 13, 1971.
*604 Love, Rigby, Dehan & Love, Kenneth Rigby, Shreveport, for plaintiff-appellee-relator.
Skeels, Baker & Coleman, Shreveport, Joe J. Tritico, Lake Charles, for defendant-appellant-respondent.

On Writ of Certiorari or Review to the Court of Appeal, Second Circuit, State of Louisiana.
TATE, Justice.
The issue before us is whether the trial court abused its discretion in continuing custody of three young children in their mother. The parents are judicially separated. The father contends that the mother is morally unfit to retain custody.
The court of appeal had reversed the trial court and had granted the husband custody. 245 So.2d 461 (La.App. 2d Cir. 1971). We granted certiorari. 258 La. 585, 247 So.2d 397 (1971).
The mother had been awarded custody of the children (two girls, aged 9, and one boy, aged 8) when she and her husband were judicially separated on June 18, 1969. More than a year later, on August 6, 1970, the father filed this rule to change the custody of the children from his wife to himself.
As more fully set forth in the court of appeal's opinion, the evidence at the custody proceeding shows:
After the judicial separation, the mother, Mrs. Fulco, met a local dentist, and they began going out together in the summer of 1969. He was a married man with two children; he subsequently separated from his wife in December of 1969.
The doctor frequented the home of Mrs. Fulco, often staying until eleven or twelve at night. On at least one occasion, he stayed overnight. On at least two weekends, Mrs. Fulco was out of town with the dentist.
After her husband filed the present rule to change the custody of the children (citing the above conduct as cause), Mrs. Fulco and her children moved in with her parents in another part of town. There is no evidence of immoral conduct since the move, although Mrs. Fulco admits that she continues to see the dentist. There are indications in the evidence that she hopes to marry him when both divorces are final.
The trial judge summarized the evidence of the four-day hearing, and he stated his reasons for continuing the custody of the mother. His thoughtful opinion shows that the trial court reached this conclusion on the basis of the legal principles to be cited below.
The trial judge felt that Mrs. Fulco's conduct had been such as to justify a change of the custody at the time of the probable adultery of July 24, 1970. However, he pointed out that, since then, Mrs. Fulco had moved in with her mother, a better environment, without present cause shown for continued complaint of immorality. Should such subsequent open immorality be shown, he indicated his intention to change the custody.
The trial judge emphasized that his judgment was founded upon what he believed to be the best interest of the three young children of the marriage.
*605 The court of appeal reversed. It held that the wife had engaged upon a public course of repeated indiscretions in disregard of moral principles.
The court felt that Mrs. Fulco's move to her mother's home and a better environment for the children did not remove the cause for changing the children's custody to the father. It stated: "Instead of relieving the condition by moving in with her mother, Mrs. Fulco has made it possible to continue her misconduct". 245 So.2d 464.
The appellate court was in error in reversing the trial court's considered continuance of the custody in the children's mother, upon the appellate supposition of future immorality. A judicially separated wife is not required to live in monastic seclusion, without any male acquaintances (although of course if she engages in a calculated and continued public course of misconduct, such will be regarded as detrimental to the interest and welfare of her children).
In this regard, we believe the following legal principles are applicable:
(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958) and jurisprudence therein cited; see also Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.
(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958); Boatner v. Boatner, 235 La. 1, 102 So.2d 472 (1958); Tullier v. Tullier, 140 So.2d 916 (La.App.1962) (citing numerous decisions of this court to such effect).
(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952); Nugent v. Nugent, 232 So.2d 521 (La.App.1970) (citing numerous court of appeal decisions to such effect).[1]
(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Decker v. Landry, *606 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952).
When we apply these accepted principles which govern custody proceedings and the review thereof, we are unable to hold that the trial judge erred in continuing custody in the mother, subject to her continued reformation from any previous course of open indiscretion and probable immorality. These young children have been with their mother since they were born. There is no showing that the mother was not providing a good and moral home for them at the time of custody hearing below, nor that any conduct on her part is having any adverse effect upon their welfare. The purpose of a custody determination is not to punish a parent for any past misconduct, it is rather to serve the best interests of the children of the marriage.
The husband urged several other grounds for a change of custody, but neither the trial court nor the court of appeal found them worthy of mention. The evidence does not support such other alleged grounds for change of custody.
For the foregoing reasons, the judgment of the court of appeal is reversed insofar as changing the custody of the children, and the judgment of the trial court is reinstated, thus continuing the custody of the children in the mother. All costs of these proceedings are to be paid by Frank Fulco, Jr., the unsuccessful plaintiff in this rule to change the custody of the children.
Court of Appeal judgment amended; trial court judgment reinstated.
SANDERS, Justice (dissenting).
The majority correctly summarizes the law applicable to child custody. It then, in my opinion, misapplies the law to the facts of this case.
Both lower courts found that the mother had carried on an illicit relation with a Shreveport dentist from June, 1969, until after the filing of the rule to change custody in August, 1970. Both courts found that the relationship was adulterous. Both courts also found that frequently the association with the paramour took place in the presence of the children.
The trial judge described the relationship as "sordid" and "in utter disregard of the rules of propriety." He found Mrs. Fulco unworthy of belief.
Without more, any court would be compelled to hold that the situation was detrimental to the welfare of the children.
After the custody rule was filed, however, Mrs. Fulco and her children moved to the residence of her parents in Shreveport. The question presented is what effect this move has on the outcome of this litigation.
The Court of Appeal found:
"Instead of relieving the condition by moving in with her mother, Mrs. Fulco has made it possible to continue her misconduct."
Contrary to the Court of Appeal, the majority now finds:
"There is no evidence of immoral conduct since the move, although Mrs. Fulco admits that she continues to see the dentist. There are indications in the evidence that she hopes to marry him when both divorces are final."
In my opinion, the mother should be divested of custody under either finding, continued immorality or continued association directed toward marriage.
The result of the majority holding is that a parent-custodian can suspend adulterous conduct after a rule to change custody has been filed and retain the custody of children. It endows a temporary adjustment made after the custody-changing machinery has already begun to operate with the power to wipe out all past misconduct of the custodian. Such a rule *607 is unsound and inconsistent with the judicial goal of promoting the welfare of children.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by SANDERS, J.
NOTES
[1] In the present case, the mother has filed a motion to remand to the trial court, attaching an affidavit of alleged after-trial facts which might justify denying custody of the father. In view of our disposition, it is unnecessary to pass upon this motion. Nevertheless, the possibility of a further change in custody illustrates a reason for the general policy of continuing custody of children in one parent rather than changing them readily from parent to parent, or at least unsettling their stable environment through repeated custody rules resulting from the altercations and accusations of the parents following the initial custody determination.