BOUTALL, Judge.
This is an appeal taken by a father from a judgment rendered in favor of the mother on a custody rule in which the father *703 sought modification or change of custody provisions in a prior custody judgment rendered at the time of divorce judgment.
Initially, Mrs. Spencer brought a proceeding for separation from bed and board against her husband, and to this Mr. Spencer filed a reconventional demand based upon the grounds of adultery. After trial, the court granted judgment of divorce to Mr. Spencer on the grounds of his wife’s adultery, but granted custody of the five (5) young children to Mrs. Spencer. In his reasons for judgment, dated May 27, 1971, the judge stated as follows:
“As usual in these types of cases of charges and counter charges, the Court is convinced that at this time it is for the best interest of the children that the custody be with the mother. It is noted that the Court has great discretion here, and it is with that in mind that the Court awards the custody of said children to the mother. However, this award of custody is done so, with a strict admonishment to the party with custody, that any variation from conduct which this Court considers to be against the welfare of the children, will not stop this Court from removing custody from the mother and upon proper proof give custody either to the father or if necessary a third party, who will have the interest of the children in mind.”
On October 18, 1971, Mr. Spencer brought the present rule for custody alleging that Mrs. Spencer had been living with one Carl Munch for periods of time during September and October of that year. He further contends that the minor children were left unattended overnight at the residence during the period in which their mother stayed with Munch. He thus contends that her continued immoral conduct is detrimental to the welfare of the children, and he should now be granted custody.
The evidence conclusively shows that Mrs. Spencer spent a considerable number of nights with Munch at the following places and times: Home Sweet Home Motel from August 28, 1971 to September 1, 1971; at 612 Poplar Street, Metairie, from September 1, 1971 to September 17, 1971, and from October 7, 1971, to October 17, 1971, the day before the rule was filed. The evidence shows that while she did not spend every one of the nights in the periods mentioned with Munch overnight, yet nevertheless she spent a majority of the nights. It was her habit to leave the children at home, generally about 9:00 p. m., and go visit with Munch, spending the night with him until shortly before 7:00 a. m. the following morning. Her explanation of these visits is that she was in love with Munch, and that she intended to marry him as soon as he obtained a divorce from his wife, from whom he was estranged at the times in question.
There is no evidence that Mrs. Spencer did not exhibit the same regard as any other mother for the welfare and well-being of her children from the hours of 7:00 a. m. to 9:00 p. m. It is evident that she rushed home in the morning in order to prepare the children’s breakfast and get them off to school. She attended their needs during the day and saw that they were safely on their way to bed at night. However, her conduct from bedtime on obviously leaves much to be desired.
As to the charge that Mrs. Spencer left her children unattended overnight, we are convinced that in general she left them attended either by a friend or by a maid whom she employed from time to time. On those nights when neither the maid nor the friend was in attendance, she sometimes secured the services of a neighbor to keep an eye on the children, although not in the children’s home; she also left the telephone number of here whereabouts so that she could be contacted in case of an emergency.
We certainly cannot say that leaving five (5) children, the oldest 13 years of age, unattended in the house at night is conduct which exhibits due regard for the safety and well-being of children, particularly when the sole purpose of so leaving them is *704 to spend the night with a boyfriend. The evidence does not disclose, however, that this was a frequent event. The best that we can say is simply that the evidence in this regard is insufficient to alone afford a basis for removal of custody contrary to the judgment of the trial court.
The other charge however, is more serious, and we feel that it has been proven. It is clear that Mrs. Spencer was keeping company with Munch overnight frequently during those periods when Munch’s wife was separated from him. The children were well aware of her whereabouts and her intentions, and in fact she notified them where she was in case she was needed at home. The children involved in this case are five (5) in number, four (4) girls and one (1) boy ranging in age from 13 to age 6. We can only conclude that they, or at least the oldest of them, are aware of their mother’s activity, and this conduct is contrary to accepted moral standards and is detrimental to the welfare and interest of the children.
While Mrs. Spencer may have loved Munch and intended to marry him, her behavior during the pre-marital relationship is objectionable. She chose to defy moral standards and to seek immediate and frequent sexual satisfaction, even to the point of leaving her children in a library or at home late at night completely unattended. Every night that surveillance was conducted, she spent the entire night away from her children and engaged in illicit activities.
The adage of practicing what one preaches is perhaps most applicable to a mother of five (5) young children. It will indeed be difficult for Mrs. Spencer to preach moral behavior to her young daughters in the light of her consistent course of conduct which was known to them. We therefore conclude that the best interest and welfare of the children will best be served by removing them from her custody.
Counsel for Mrs. Spencer urges to us that the general rule is that it is in the best interest of the children to grant custody to the mother, especially when they are of tender years. This custody should not be denied except in exceptional cases, and the trial court has great discretion in the award of the custody, and that its determinations are entitled to great weight before the appellate court because of its position of evaluating the best interest and welfare of the children. We are referred to a number of cases expressing these principles, and we have no quarrel with them. We note that the trial judge in this case permitted Mrs. Spencer to keep custody of the children, but we think that the facts herein are such that he is in manifest error.
Appellee in the main relies upon the cases of Lovell v. Lovell, 205 So.2d 470 (La.App. 2nd Cir., 1967), and Fletcher v. Fletcher, 170 So.2d 144 (La.App. 2nd Cir., 1964).
In the Lovell case, Mrs. Lovell had a number of dates with the corespondent and committed adultery on at least several occasions with him. However, she was granted custody of the minor children because the court apparently found that her conduct was such as to not necessarily establish her moral unfitness for the custody for the minor children, especially when it was considered that Mr. Lovell was in the service stationed abroad and not in position to exercise the care and custody of the children.
In the Fletcher case, Mrs. Fletcher, after the divorce, had lived with the corespondent during the course of a few months under promise of marriage, and upon realization that there would be no marriage forthcoming, she discontinued her relationship. At the same time the court concluded that the conduct of Mr. Fletcher was such that he himself was unfit to have custody of the children, and so left the children with Mrs. Fletcher.
A recent case involving a somewhat similar set of facts is the case of Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). In Fulco, the mother, after judicial separation, began going together with a married *705 man who had two children of his own. The corespondent frequented Mrs. Fulco’s home, often staying until 11:00 or 12:00 at night, and on at least one occasion stayed overnight. On at least two weekends, she was out of town with the corespondent. Upon the filing of a rule to change custody, Mrs. Fulco moved in with her parents in another part of town. The court felt that this evidenced a desire to break off the immoral relationship which existed between Mrs. Fulco and the corespondent, and that thus the children were removed from the harmful environment to which they were exposed. The court stated that the welfare of the children was the paramount consideration, and upon a finding that it was to the best interest of the three young children of the marriage to remain with their mother, the court denied the change of custody. We note in the cases above referred to that the indiscretions of the mother were the first of which she had been accused, and there was evidence that such conduct was no longer being continued. In the case at bar, the situation is different in this regard.
In the case at bar, Mrs. Spencer had been shown to have been committing adultery and upon this the judgment of divorce was based. At that time, in his written reasons for judgment, the court warned Mrs. Spencer that her continued misconduct could lead to a change of custody of the children. The evidence produced upon the trial of the custody rule shows clearly that not only has Mrs. Spencer continued her misconduct, but has in fact increased it. While it is conceded that she is now divorced, and hence is allowed the freedom that any other single person should enjoy in social relationship, nevertheless, her continued spending of nights away from home cannot be conducive to the best interest and welfare of the children. The evidence shows that her conduct continued right up to and including the filing date of the rule, October 18th.
We note that in the Fulco case, supra, there was evidence that Mrs. Fulco ceased her misconduct between filing date and trial date of rule. No such evidence exists in the record of this case.
 At this point it might be well to mention that along with briefs submitted to us, counsel for defendant-appellant has attached an affidavit by the wife of the corespondent, relative to their marital relationship. Objection has been made to our consideration of this affidavit, and we are of the opinion that the objection is well founded. We cannot consider facts not forming a part of the record before the trial court, upon which it based its conclusion, and we refuse to consider the affidavit or any reference to it in argument.
Our consideration of the facts in this case lead us to believe that they are similar to some degree to the factual situations as faced the court in the cases of Hebert v. Mestayer, 251 So.2d 67 (La.App. 3rd Cir., 1971); Strother v. Strother, 248 So.2d 867 (La.App. 3rd Cir., 1971); Marchand v. Marchand, 246 So.2d 216 (La.App. 1st Cir., 1971) and Morris v. Morris, 152 So.2d 299 (La.App. 1st Cir., 1963).
Although the facts are dissimilar in each case, applying the principles announced in those cases, we find that the evidence reflects that these are not simply indiscretions which may have occurred in isolated instances or resulting from momentary weaknesses, but instead, they constitute a considered and determined plan of conduct over a substantial period of time, and in fact continue, even after the appellee was warned by the trial judge as to the dangers involved in continuing such conduct. We do not feel that we can apply in this case the rationale of the Fulco case, because there is no showing whatsoever that Mrs. Spencer will change her course of conduct, in fact her past performance indicates that it will be continued. Although it appears that Mrs. Spencer did look out for her children in all matters other than this exposure to immoral conduct and taking care of them at night, we cannot agree *706 with the conclusion of the trial judge to let custody remain with her, when we see no reason to believe that she intends to discontinue her immoral conduct.
This brings us within the rule established within the case of Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955). Under that rule it is necessary that the party requesting the modification of custody prove that the conditions under which the children are living are detrimental to their interest and additionally that the applicant can and will provide a good home and better environment if given their custody.
There is nothing in the record which indicates that Mr. Spencer is engaged in any immoral conduct or that he is in any way unfit to assume custody of the children. He is apparently a man of some means and can easily supply the children with the necessities as well as the comforts and conveniences necessary to their upbringing. He recites that at the present time, he has a home of some three (3) bedrooms and two (2) baths, and undoubtedly is able to supply a larger home if such becomes necessary. Since he lives alone, it is necessary of course that he employ someone, or prevail upon possibly some relative in order to take care of the children while he is at work. He expresses an obvious desire to do exactly this and we feel that he is deeply interested in the welfare of his children.
Therefore, for the reasons above discussed, we are of the opinion that the trial judge erred in not modifying the custody of the five (5) minor children, and in permitting custody to remain with Mrs. Spencer. The judgment dismissing the rule for custody is now reversed, annulled and set aside, and there is judgment herein awarding custody of the minor children, Michelle Spencer, Harry Spencer, Sharon Spencer, Bonnie Spencer, and Susan Spencer, to their father, Philip P. Spencer. The matters of visitation, use of the family home, and other incidental matters are referred back to the trial court for its further consideration.
Reversed.
GULOTTA, L, dissents with written reasons.