LOTTINGER, Judge.
This is a suit filed by Marjorie LeBlanc, as petitioner, against her husband, Roland Paul Aucoin, wherein she seeks a separation from bed and board as well as the care, custody and control of the minor child, John Edward Aucoin. This matter was consolidated for trial with Suit Number 9144 entitled Roland Paul Aucoin vs. Marjorie LeBlanc, wherein the petitioner therein seeks a divorce from his said wife on the grounds of adultery and also seeks the care, custody and control of the minor child. A reconventional demand was also filed in the instant suit. The cases were tried together below and the Court granted a judgment of divorce in favor of the defendant, Roland Paul Aucoin and gave him the custody and control of the minor child. The petitioner has taken this appeal.
We will treat both cases in this one opinion, however, separate judgments will be rendered. The only question before the Court on this appeal is relative to the care, custody and control of the minor child, John Edward Aucoin.
On February 7, 1972, Marjorie LeBlanc filed a petition for separation from bed and board from her husband on the grounds that her husband was guilty of such cruel and ill treatment and outra-geousness as to render their living together insupportable. She asked for the care, custody and control of the minor child and asked for alimony and child support.
Answer and reconventional demand were filed, denying all the allegations of petitioner’s petition except the allegations pertaining to domicile and birth of the minor child. Defendant alleged that the wife was an unfit mother and he should be awarded the care, custody and control of the minor child.
On February 10, 1972, the husband instituted Suit Number 9144 for the divorce from his wife based on the grounds of adultery and alternatively for separation from bed and board based on abandonment. He also alleged that the wife was an unfit mother and prayed for the custody of the minor child who was then two years of age. Answer in the nature of a general denial was filed by the wife again seeking the custody of the child.
The wife appeals from the judgment of the Lower Court which rendered the care, custody and control of the minor child to her husband, alleging that the Trial Judge erred in finding her to be an unfit mother and awarding the care, custody and control of the minor child to her husband. In its oral reasons for judgment the Lower Court said:
“It is the finding of this Court that the Plaintiff has proven by an overwhelming amount of evidence that he is entitled to a divorce on the grounds of adultery. Certainly, in rendering this decision the Court fully recognizes the fact that the parties were not caught in the act and the Court knows of no law that required that the parties be actually caught in the act to constitute sufficient proof of an act or many acts of adultery. I would think that the acts of indisgression (sic) on the part of this lady are such that it leaves nothing to anyone’s imagination that she has on more than one occasion been guilty of adultery with one Way-land Whipple.
*739 * * * * * *
“Always, paramount in all these cases is the significant thing, what is good for the child. Where is the welfare of the child to be served at its very best. Now, trying to fit the Fulco case within the framework of the evidence that we have here, here we have a young lady whose indisgressions (sic) were obviously notorious and public. Maybe not continuous but so notorious that obviously the neighbors became aware of what was going on. It didn’t happen on only one occasion. McElroys testified of three separate occasions where Mr. Whipple’s presence was in the home. One of the most significant things that has been brought home to this Court in this last episode of the 30th, January 30th, 1972, here was a young lady who had no more respect for herself and her family or for you can say her child as to be clad, so scantly (sic) clad that anyone could see her body. There’s no question about that there was a man in the house when she was so clad but to appear on the porch under circumstances where it could only be evident to her that she was displaying herself it further satisfies the Court of the complete moral breakdown of this young lady. Obviously, she was a very fine young lady at one time, but the circumstances presented to this Court today can only show moral decay. Now, true this Court can not assume, speculate, or infer from the testimony that has been given here today that the acts which were testified to by the McElroys have been continuous but by this young lady’s own testimony Mr. Whipple moved her into her present residence. She saw him last night. She’s still driving an automobile that was obviously she says given or loaned to her. Certainly from this you can infer that the circumstances that existed on Jackson Street’ have not changed, that her immoral conduct is a continuing thing although it is not public in nature. So, just with this particular conduct itself the Court feels that she is not morally fit to properly care for her child, and the best interest of the children because of her immoral conduct is not such that the child should remain in her home. There are also additional considerations other than her immoral conduct. It’s because of her conduct, not her working conduct where she’s working during the day time hours, certainly there is no criticism there, that she has to have a babysitter to care for the child but if she were a good mother and she were to exercise that degree of interest in the child that a good mother would exercise she would not be going around partying and obviously not only on weekends where she can not be located by anyone and perhaps for a very good reason. Certainly her conduct in not being able to be located at various times is indeed very suspicious considering the fact that she has an automobile that she’s using, belongs to her paramour and the evidence that she has been out until even five and six o’clock and seven o’clock in the morning, all night long. Now, a child who is with babysitters all throughout the day and then most frequently with babysitters at night is not the proper way to bring up a child. This indicates almost complete lack of interest on the part of the mother. Certainly not condusive (sic) to the best interest of and welfare of the child. After listening to the grandmother’s testimony, I think what I have said solidifies my previous impressions that I had gleaned in listening to the evidence. Mrs. McElroy, the grandmother of the child, does not feel that her daughter is a proper person to rear the child. Certainly she has insight into the matter probably greater than any of us here present. As to the discipline of the child, I don’t know that this plays any real and great consideration in the matter. Certainly no child should be brutalized. It does however indicate one thing, that the mother is a very unstable person. So, coupled with the other reasons that I have given further solidifies in this Court’s mind that there is an ex *740 treme need that custody be removed from the mother. This Court feels that the testimony of Mr. Roland Aucoin, Sr. indicates that a good home surroundings can be provided. The child’d be properly cared for an the father will be there although he is occupied in earning a livelihood in doing that which he is trained to do. At least he will be there almost as frequently as the mother was there to care for the child. The Court feels that the best interest and welfare of this child therefore is best served by granting custody to the father.”
We, therefore, find that the Lower Court, in divesting the custody from the mother, relied primarily on three findings of fact, namely:
1. The complete moral breakdown of Marjorie LeBlanc
2. Her continued absence from the child and her lack of interest in the child
3. Her apparent instability
In Fulco v. Fulco, 259 La. 1122, 254 So.2d 603, which the Lower Court distinguished from the present case, the Supreme Court said:
“A judicially separated wife is not required to live in monastic seclusion, without any male acquaintances (although of course if she engages in a calculated and continued public course of misconduct, such will be regarded as detrimental to the interest and welfare of her children).
In this regard, we believe the following legal principles are applicable:
(1). The paramount consideration in determining to whom custody should be granted is always the welfare of the children. (Cases cited).
(2). The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. (Cases cited).
(3). When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heaby burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. (Cases cited).
(4). Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interest of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof.” (Cases cited).
In Fulco v. Fulco (supra) the District Court had awarded custody of the children to the mother. The judgment was reversed on appeal and the Supreme Court reversed the Appellate Court again granting the custody to the mother. However, in that case, the mother was living with her parents and the Court found that although the mother’s conduct had been such as to justify a change of custody, she had since moved with her children into the home of her mother and a better environment was present. Such is not the case with facts before us. As a matter of fact even the petitioner’s mother testified on behalf of the defendant herein to the ef- *741 feet that her daughter was an unfit mother.
For the reasons hereinabove assigned the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by appellant.
Judgment affirmed.