FRUGÉ, Judge.
Plaintiff, Phyllis Prevot, filed a petition for separation from bed and board based on the grounds of cruelty and inhumane treatment. The defendant, Nelson Williams, Jr., filed an answer to the plaintiff’s petition and a reconventional demand for divorce based on adultery. A trial was had and the judgment of the district court granted the divorce to the defendant and awarded custody of the three minor children to the plaintiff. The defendant has appealed. We affirm.
*379 The plaintiff filed her petition for separation on July 3, 1972. The defendant subsequently filed a petition for divorce based on the grounds of adultery. On January 9, 1973, the defendant filed an answer to the plaintiff’s petition for separation and a re-conventional demand for divorce based on adultery. The earlier suit instituted by the defendant herein was later dismissed. On November 6, 1973, trial was set for December 11. At the time of the institution of the plaintiff’s action, she was represented by Maxwell Bordelon. On November 20, Mr. Bordelon filed a motion withdrawing as counsel of record for the plaintiff. No notice of this withdrawal as counsel of record was sent to the plaintiff.[1] On December 11, the case was called for trial. No appearance was made by the plaintiff. The defendant, represented by counsel, presented his case on his reconventional demand and introduced evidence supporting his allegations. The case was submitted to the court and after considering the law and evidence, the court granted a divorce to the defendant and custody of the children to the defendant, subject to reasonable visitation rights to the plaintiff-mother.
In December of 1973, the plaintiff was residing in Houston, Texas. She consulted with a Texas attorney, Larry Vick, concerning the possibility of having the trial transferred from the Louisiana courts to the Texas courts for the convenience of the plaintiff. On December 10, Mr. Vick attempted to contact Mr. Bordelon to inquire as to the status of the plaintiff’s case and to notify him that the plaintiff was then in the hospital and would not be able to attend the trial that was set for the next day. Mr. Bordelon could not be reached on the 10th, and did not return the call until December 12th. On December 14th, plaintiff’s present counsel was contacted by the plaintiff’s mother and was retained by her later that day. Inquiry was made by the plaintiff’s new attorney of Mr. Borde-Ion as to his former representation of her and he was informed that the plaintiff had been unable to attend the trial on the 11th because of her hospitalization following an accident in Houston. Based upon the information received from Mr. Bordelon, an application for a new trial was filed on December 14th. A hearing was held on the application on December 28th, and a judgment granting a new trial was signed on January 8, 1974. The trial on the merits was held on March 15, after which a divorce was granted in favor of the defendant based on the adultery of the plaintiff, and the custody of the three minor children was granted to the mother. The judgment was signed on March 22. The defendant filed an application for a new trial on March 27, which was set for hearing on April 2. This application for a new trial was denied by the district judge.
The appeal by the defendant raises four questions for our consideration.
I.
The defendant first argues that the trial judge exceeded the bounds of his discretion in granting a new trial to the plaintiff when she knew that she had been ordered to appear in court on the day of the trial and when a false statement had been made in the motion for a new trial that the plaintiff was involved in an automobile accident on the way to the trial and was hospitalized as a result of it.
The record clearly indicates that the factor most impressing the trial judge when he granted a new trial to the plaintiff was that she had not been notified of the withdrawal of her attorney prior to the date of the assigned trial. He repeatedly emphasized that he was fully aware that the plaintiff had been notified of the trial date- and had been ordered to appear with the three children. But he was concerned by the fact that a lay person without counsel *380 had been laboring under the misconception that she was represented and had, as a result, not had her day in court.
The defendant made a further objection to the granting of a new trial because of the allegations found in the application. The application alleged that the judgment rendered was contrary to the law and evidence. However, the explanation for the application was that the plaintiff had been injured in an automobile accident and hospitalized at the time of the trial, and could not attend the trial for that reason. The defendant contends that since the plaintiffs ground for applying for a new trial was that the judgment was contrary to the law and evidence, the trial judge did not have the discretion to look to other grounds for granting a new trial and should have denied the new trial because of the failure of the plaintiff to support her allegation.
We note that much discretion is given to the trial judge in granting new trials when such a course of action best serves the ends of justice. The trial court has virtually unlimited discretion to order a new trial, even on its own motion, when it is convinced that a miscarriage of justice has resulted. Shows v. Williamson, 256 So.2d 688 (La.App. 2nd Cir. 1972), writ refused 261 La. 231, 259 So.2d 76; Soileau v. Fusilier, 237 So.2d 92 (La.App. 3rd Cir. 1970). Furthermore, the appellate courts will not interfere in decisions of the trial courts on matters of this nature, unless there has been a clear abuse of this discretion. Shows v. Williamson, supra; Strobel v. Schlegel, 145 So.2d 664 (La.App. 4th Cir. 1962).
We are convinced that the action of the trial judge in granting the new trial was taken out of an abundance of caution for the plaintiff’s right to present her case, and was in no way based upon the allegedly false statement made in the motion for a new trial. Therefore, we find that the trial judge was within the bounds of his discretion in granting the new trial.
II.
The defendant next argues that the trial judge exceeded his discretion in refusing the defendant the opportunity to offer evidence in opposition to the plaintiff’s motion for a new trial. The argument involves the statement made in the plaintiff’s application for a new trial that she was not at the trial because she had been involved in an accident on the way to the trial and had been hospitalized on the day of the trial. The defendant wanted to introduce the evidence that in fact the plaintiff had not been involved in a wreck on the way to the trial. As discussed earlier, the trial judge did not seem to place any emphasis on the alleged hospitalization of the plaintiff in his decision, but rather was concerned that she was under the mistaken impression that she was represented by Louisiana counsel at the time of the trial when in fact her attorney had voluntarily withdrawn from the case without notifying her. Again, we emphasize the broad discretion of the trial judge in this area, and find that the trial judge did not exceed his discretion in refusing the offer of evidence submitted by the defendant.
III.
The defendant next argues that the trial judge erred in awarding custody of the minor children to the plaintiff when the evidence indicates that the plaintiff was guilty of adultery committed in the house in which the children resided over a period of fifteen months. Under Strother v. Strother, 248 So.2d 867, (La.App. 3rd Cir. 1971), the defendant contends that if the court should find that the mother had recently lived in open adultery with her paramour for a substantial period of time, she is morally unfit for custody of the minor children. The defendant further argues that under Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), two prerequisites must be found for the mother who has been guilty of adultery to gain custody of her children: (1) The finding that the im *381 moral conduct ceases as of the time of the move to change the custody, and (2) a finding of there being an absence of present cause shown for continued complaint of immorality.
In Strother, the action for divorce was based on the wife’s adultery. The custody issue involved whether the wife was morally fit to have custody of her ten year old daughter. Moral fitness was contested with evidence that the wife had lived in the house of another man and that her child had lived with them. This court determined that the proof was of an adulterous relationship which was calculated, open, and public. The conduct continued over a substantial period of time in total disregard of the basic moral principles of the society. The child was in the house at the time of the alleged acts of adultery and was old enough to understand her mother’s actions. This court found that exposure to such conduct necessarily had a bad effect on the child involved. An important factor to remember in reading the Strother case is that the misconduct in question had occurred recently and there was no indication in the record that the mother had changed her ways.
In the present case the plaintiff-mother admittedly lived with her paramour in Houston for a period of fifteen months. The children, ages 6, 4, and 2, were living with the plaintiff while she was in Houston. However, the trial judge found, and the record supports his findings, that the plaintiff in this case had ceased her immoral conduct in December, 1973. The court found that the plaintiff had not resumed her immoral conduct as of the hearing of this case, and therefore found the mother morally fit to retain custody of her children. In Fulco our Supreme Court allowed the mother to retain custody of her 8 and 9 year old girls who had lived with her all their lives even though she had lived in open immorality with a man not her husband for a period of time before and shortly after the filing of the rule by her husband to change custody. The court seemed to be impressed by the fact that at the time of the hearing the wife had ceased living an immoral life, had moved in with h'er parents, and showed no indication of resuming the immoral conduct. The court noted that the paramount consideration in determining to whom custody should be granted is always the welfare of the children. The court further stated the general rule that it is in the best interest of the children of a marriage to grant custody to the mother, particularly when they are of tender age. This paramount right of a mother should not be denied unless she is morally unfit or otherwise unsuited to have custody of her children. When the trial court makes a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children that it justifies removal of the custody to another who is better able to provide the proper environment for the children. Fulco v. Fulco, supra. The court had the following to say, which we think is pertinent to the case at hand:
“When we apply these accepted principles which govern custody proceedings and the review thereof, we are unable to hold that the trial judge erred in continuing custody in the mother, subject to her continued reformation from any previous course of open indiscretion and probable immorality. These young children have been with their mother since they were born. There is no showing that the mother was not providing a good and moral home for them at the time of custody hearing below, nor that any conduct on her part is having any adverse effect upon their welfare. The purpose of a custody determination is not to punish a parent for any past misconduct, it is rather to serve the best interest of the children of the marriage.” 254 So.2d at 606.
*382 As in the Fulco case, the children in this case have lived with their mother all their lives. The record indicates that only the oldest of the three children is aware that the defendant is his father. To take these children from their mother with whom they have lived all their lives and place them with the'father who is, for all practical purposes, a stranger to them would certainly be an injustice in light of the mother’s apparent reformation.
One of the defendant’s arguments in the present case is that Fulco requires that there be a finding that the immoral conduct has ceased as of the time of the filing of the action for a change in custody. He argues that she had not ceased living with her paramour at the time of the reconven-tional demand nor at the times when earlier hearings were scheduled but postponed. She did, however, cease the immoral conduct prior to the hearing in which the trial judge determined custody following the granting of a new trial to the plaintiff. We think that the defendant has misstated the principles set forth in the Fulco case, and find support for this in the dissent by Justice (now Chief Justice) Sanders: “The result of the majority holding is that a parent-custodian can suspend adulterous conduct after a rule to change custody has been filed and retain the custody of children.” 254 So.2d at 606. As in the Fulco case, the plaintiff in the present case had not ceased her immoral conduct at the time of the filing of the action. However, the conduct ceased before the hearing to determine custody, and there was no indication in the record that such conduct would be resumed.
Spencer v. Spencer, 261 So.2d 702 (La.App. 4th Cir. 1972), cited by the defendant in his appellate brief, is distinguishable from the present case in that the court found that there was no showing whatsoever that the wife would change her course of immoral conduct, and in fact found evidence that she would continue her immoral conduct. The court therefore found that it could not apply the rationale of the Fulco case under the circumstances. In the present case there is evidence that the plaintiff-mother of the children has changed her course of conduct, and that she is now morally fit to have the custody of her children.
 Rayner v. Rayner, 263 So.2d 732 (La.App. 3rd Cir. 1972), is also cited by the defendant in brief. That case is not applicable to the present factual situation. There this court refused to change custody when the trial court had also refused to make such a change in view of the fact that the burden on the one desiring to change custody had not been met. It is incumbent upon the one desiring to change custody to prove that the change is needed in the best interest of the child. This court pointed out that there is much discretion in the trial judge in the matter of custody changes and the trial judge’s decision will not be disturbed in the absence of a clearly erroneous decision.
IV.
Lastly, the defendant alleges error on the part of the trial judge in refusing to permit him to present evidence at his motion for a new trial which alleged among other things newly discovered evidence. The defendant argued that there was evidence that the plaintiff had not ended her open adultery with her paramour, this preventing the analogy with the Fulco case by the trial judge. At the hearing on the motion for a new trial, the defendant attempted to call the plaintiff for cross-examination. The trial judge refused to hear the testimony, and denied the motion. We note that the defendant had the plaintiff on the stand under cross-examination during the trial, and could have gone into the issue of whether she was still living with her paramour at the time of the hearing. However, the defendant failed to cross-examine on this issue. He should not be permitted to reopen a case at this time when evidence on the issue was available during the trial. We *383 find no error on the part of the trial judge.
For the reasons assigned, the judgment of the trial court is affirmed, with the costs of this appeal assessed against the defendant-appellant.
Affirmed.

. Mr. Bordelon made an attempt to notify the plaintiff of his withdrawal but was unsuccessful because he did not have the plaintiff’s Houston address.