ELLIS, Judge.
This suit was filed on December 4, 1973, by Robert J. Crowe, seeking a separation from bed and board from Cassandra Ann Nevers Crowe on the ground of abandonment. On March 1, 1974, an order was signed granting temporary custody of the parties’ nine year old son to plaintiff, pursuant to stipulation, without prejudice to defendant’s right to have the issue of custody determined at a later hearing. On January 15,1975, defendant filed a rule for a change of custody. The matter was continued several times at the instance of both parties. On December 1, 1975, plaintiff filed a petition for a final divorce on the ground of living separate and apart for more than two years.
On April 5,1976, following a full hearing, judgment was rendered in the custody rule, granting permanent custody to the plaintiff. On April 21, 1976, judgment of divorce was rendered in favor of plaintiff, again awarding permanent custody to plaintiff. Defendant has appealed.
The evidence shows that the parties were married on April 22, 1966, and that their son, Robert J. Crowe, Jr., called Joey, was born on October 2, 1967. About three months thereafter, Mrs. Crowe was hospitalized in Southeast Louisiana Hospital, a mental institution, for depression. She was discharged eight months later, and went to live with her parents. She remained with them for about six months and then returned to live with her husband and child at the family home in Bogalusa, Louisiana.
During the next six and one-half years the parties remained together, except for a number of occasions when Mrs. Crowe would return to her parents for periods of from three days to one week. The parties separated finally in September, 1973. At that time, Joey remained with his father, and has been with him until the present time.
In February, 1973, Mrs. Crowe began seeing a psychiatrist, Dr. Richard M. Dawes, who treated her until April, 1974. Dr. Dawes was of the opinion that Mrs. Crowe’s condition was somewhere in the area between severe neurosis and schizophrenia. He felt that she was a very dependent person who was unable to accept responsibility for other persons. He was of the opinion that she would have to become more independent before she could adequately care for her child. Dr. Dawes examined Mrs. Crowe again, in April, 1975, and his opinion remained the" same.
Mrs. Crowe also consulted Dr. Robert An-cira, a psychiatrist, who saw her three times, on February 28, and April 14 and 21, 1975. Dr. Ancira found her “to represent a personality disorder”, having “an area in her personality that she is in conflict with, having to do with her own dependence or independence of behavior.” He felt that she needed “to have a person available to whom she can periodically turn to for guidance and reassurance and support.” He was of the opinion that, so long as Mrs. Crowe had some person available for support, she could care for her child, but that, if the support were removed she would probably revert to her former patterns of behavior.
It appears from the record that Mrs. Crowe took care of the child adequately while living with her husband. The conditions under which she plans to care for him, if she gains the custody, seem to be consistent with those afforded by any working mother.
Mr. Crowe is a police officer in Bogalusa, Louisiana, working various shifts. He still resides in the family home, which is located on an acre of ground given him by his *410 father. Mr. Crowe’s parents live nearby. Joey has a room in both his father’s and his grandparents’ houses. During the week he sleeps at his grandparents’ house, because his grandmother gets him off to school in the morning. When the plaintiff is at home, Joey stays with him, and they see each other on a daily basis.
Joey attends school and church in Bogalu-sa. He plays league football, is a Cub Scout, and enjoys hunting and fishing with his father. He visits with his mother every other weekend.
Mr. Crowe testified that he is dating a woman, with whom he has had intimate relations. He testified that this has never occurred when Joey was in the house, and that he believes Joey to be unaware of it.
In determining the propriety of a judgment awarding custody we are guided by the following principles, quoted in Nethken v. Nethken, 307 So.2d 563 (La.1975):
“Universal and fundamental principles of the law support the proposition that the paramount consideration in custody cases is always the welfare of the child.
“In keeping with the law’s aim to promote the child’s welfare, the decisions have recognized that the child’s best interest is served when custody is awarded to the mother, especially when the child is of tender years. Based upon this premise, the mother’s right to custody is paramount. Thus custody should not be denied the mother unless she is morally unfit or otherwise unstable, and then only when the immorality or instability is such that these characteristics and her conduct adversely affect the child. It is only in exceptional cases that the child’s best interest is served by changing custody from the mother to the father.
“When the trial judge has made a considered adjudication of permanent custody based upon these principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of clearly proving that the continuation of the existing custody so adversely affects the child that the child’s removal is justified.
“Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his findings will not be disturbed in the absence of a clear showing of error. See also Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), and the cases cited therein.” 281 So.2d at 697.
After reviewing the record, we find there is ample evidence to support the findings of the trial judge. We recognize the paramount right of the mother to the custody of children of tender years. However, in this case, that consideration is outweighed by the fact that the child has been with his father for almost four years, when coupled with Mrs. Crowe’s unfortunate history of mental illness and instability. We agree with the trial judge that the best interests of young Joey require that he remain in the custody of his father.
We reject Mrs. Crowe’s contention that this is a custody case between the mother and the grandparents, rather than between the mother and father, as not being supported by the record.
The judgment appealed from is affirmed, at defendant’s cost.
AFFIRMED.