364 So.2d 1318 (1978)
Godfred J. SCHEXNAYDER
v.
Sheila Granier SCHEXNAYDER.
No. 9224.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1978.
Writ Granted December 14, 1978.
G. Walton Caire, Edgard, for plaintiff.
Harold J. Sonnier, Tauzin & Sonnier, Thibodaux, for defendant.
Before SAMUEL, REDMANN, GULOTTA, STOULIG and BEER, JJ.
REDMANN, Judge.
On an ex-husband's appeal, we affirm the award of custody of his two young children to his ex-wife, despite her admitted adultery approximately ten times with the same man over a two-month period.
"The determination of the trial judge in child custody matters is entitled to great weight" and "[h]is discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof." Fulco v. Fulco, 1971, 259 La. 1122, 1130, 254 So.2d 603, 605.
Few of us are ideal parents. In respect to her adultery, Mrs. Schexnayder is not a worse offender than Mrs. Fulco was. The trial judge's difficult decision was articulately explained[1] and, within the Fulco principle, ought not be disturbed.
*1319 We join in the trial judge's observation that any grant of custody is subject to change in the event the conduct of the parent with custody warrants a change.
Affirmed.
SAMUEL, C. J., and STOULIG, J., dissent and file opinions.
BEER, J., concurs in the judgment and files opinion.
SAMUEL, Judge, dissenting.
At issue is the custody of two minor children, age 4½ and 3½ years at the time of trial. The father had filed a suit for separation from bed and board. By supplemental petition, he later sought a divorce on the ground of adultery. Following the hearing of a custody rule he was granted the temporary custody of the children during the pendency of the suit. After the divorce judgment had been granted and following another hearing on the question of custody, the trial court granted custody to the mother.[1] The father has appealed from the judgment awarding custody.
In primis, it should be pointed out that in this matter custody is not controlled by C.C. art. 146, which is concerned with the custody of children while the litigation is pending and which custody is referred to in that article as "provisional." Custody here is controlled by C.C. art. 157, prior to its amendment by Act 448 of 1977,[2] which is concerned with custody following separation or divorce and which, in pertinent part, reads:
"In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. * * *"
Despite the above wording of Article 157, the Supreme Court of Louisiana has established the jurisprudential rule that in all cases of custody of children, regardless of which parent has obtained the separation or divorce, the mother is to be preferred unless she is shown to be morally or otherwise unfit, thus placing on the father the burden of proving unfitness of the mother.[3] This court is required to follow that rule. However, either under the literal wording of the article or under the rule, I am of the firm opinion that custody in this case should be given to the father.
It is necessary to set out the facts in more detail than the majority opinion does. As established by the record, the pertinent facts are:
The litigants lived next door to the husband's parents. He frequently worked at night. On many of those occasions, telling her in-laws she was going to play bingo, the wife sent the pajama-clad children to the paternal grandparents to be fed, put to bed, and taken care of the next morning. However, instead of playing bingo, the wife was meeting her paramour, a man of another race (the litigants are white and the paramour is black), at a motel in a nearby town and in other public places. The affair soon became common knowledge and the subject of much gossip in the small community where the parties resided.
At the time of trial the wife was 23 years of age. She stopped going to school when she was in the eighth grade. Her parents had permitted this because she was failing "everything" and her mother thought she might as well stay home and help with the *1320 other children in their large family. When the wife's parents heard she was "messing around", they confronted their daughter who tearfully admitted her indiscretions. But she refused to promise she would discontinue seeing her lover, stating only that she would "try".
It is clear that whichever parent is awarded custody, the children will live in the home of one set of grandparents. Both sets of grandparents expressed a willingness and desire to care for the children as long as necessary. They each have three bedroom homes, in nice neighborhoods where there are other children. The maternal grandparents have the children's mother and three of their other children in their home. With the addition of these two young children there would be eight people in the household, although one of the older daughters intended to be married in the fall and presumably would be establishing her own home. All of the children of the paternal grandparents are married and living elsewhere. Thus, the paternal grandparents would have no others to look after, and these children would have a room of their own.
Although the trial court found the wife had not seen her paramour since January 1, 1977, it is clear she attempted to reactivate the affair thereafter. On three different days during the weekend of January 7, 1977, she telephoned her lover at his home leaving her name and number with that man's daughter and a message requesting that he return her phone calls. These calls caused the paramour's wife to see the defendant and her parents at the latters' home. According to the defendant-wife she had committed adultery on more than five but less than ten occasions between September, 1976 and January 1, 1977. She claimed not to have seen her lover since that date.
It should be emphasized that the record contains no evidence even suggesting that the father is in any way unfit for custody.
It is an established rule that one or more isolated cases of adultery do not suffice to deprive the mother of her right to custody of children of the marriage.[4] However, here the instances of adultery are not isolated. The mother's behavior was flagrant, even open and notorious. In addition to meeting her lover at a motel, she met him behind a church in Vacherie, Louisiana, at a bar, behind the school house, on the levee, or on a little traveled road in the area. Her conduct was openly observed and, as has been mentioned, caused scandal and gossip in the community to such an extent that the affair soon became common knowledge. She was not only observed at night but during the day.
I am unimpressed with the wife's testimony that she "thinks" she committed adultery less than ten times. The trial judge found "approximately" ten times. My reading of the record indicates many more times than that. In addition, I am unfavorably impressed with her refusal to promise to stop seeing her lover. Although the trial judge believed she had not seen the man since January 1, 1977, it is quite clear her attempts to contact him at his home on several occasions thereafter shows she was trying to continue the affair.
I adhere to the rule that a mother is unfit to be awarded the custody of the children when it is shown she consistently has engaged in a course of open and public indiscretions in defiance and disregard of generally accepted moral principles. In such instances, custody should be awarded to the father or to the other party lawfully entitled thereto.[5]
To reiterate, while the record is replete with evidence of the unreliable character and unfitness of the mother, there is no evidence of any kind detrimental to the father. On the contrary, the children appear to have been well fed, clothed and otherwise entirely properly cared for while in his custody.
*1321 In my view, the trial court properly recognized that the mother's conduct "was particularly scandalous and offensive to the sensibilities of the local community in that her lover was of another race". The inevitable result of that conduct is the disregard in which the children would be held by other persons in the community, particularly other children. The mother's conduct shows a lack of love and consideration for her children. Further, it appears to me that the trial judge was overly concerned about the fact that we no longer have any laws against miscegenation. The issue here is not the civil rights of the defendant's paramour. At issue is the effect on the children of the mother's open and notorious conduct.
The Supreme Court case of Fulco v. Fulco,[6] relied on by the majority, does not support an affirmance. Fulco is an extreme case and should not be extended. In addition, Fulco is distinguishable in several respects. Unlike Fulco : (1) here a reversal would not result in a change of custody (in Fulco the mother had custody and the father sought a change of custody to himself, while the trial court judgment in this case changed the custody from the father to the mother); (2) the mother's conduct in Fulco was far from the public and notorious conduct of the mother in this case; (3) the court in Fulco was fully satisfied that the mother's affair was finished and would not be resumed, whereas in this case no such conclusion, indeed the opposite conclusion, can be drawn; and (4) in this case the repercussions of the affair relative to the mother's paramour, who was of another race, is totally absent in Fulco.
As I am of the opinion the mother in this case is morally unfit and that it is clearly in the best interest of the children that they be continued in the custody of their father, and as I would reverse the judgment appealed from,
I respectfully dissent.
STOULIG, Judge, dissenting.
I respectfully dissent for the reasons assigned in the dissenting opinion of SAMUEL, J.
BEER, Judge, concurring.
Appellant makes a strong case. Yet, I feel compelled to maintain allegiance to the proposition that an able trial judge, who has the manifest advantage of measuring the demeanor of the key witnesses during the trial court confrontations, as well as the manifest ability (here, perhaps, most important of all) to sort out the local and overall impact of his custody decree upon the minors, must be accorded the widest possible discretion.
NOTES
[1] At issue before the court is the custody of two minor children, five and six years of age respectively.

While in determining custody the welfare of the children is the paramount consideration, the very strong maternal preference rule repeatedly recognized in this state compels an award of very young children to the mother unless she is shown to be unfit.
Here the husband obtained a divorce from the mother on the ground of adultery. The mother freely admitted an affair lasting from the end of September, 1976 to January 1, 1977, during which she met another man approximately once a week and with whom she admitted having intercourse approximately ten times. She denies having any contact with him since January 1, 1977, and there is no proof of any misconduct on her part since that date. No impropriety was shown to have been committed in the presence of the children.
The question is, is this sufficient to deprive the mother of custody? The clear answer under the jurisprudence is no. Numerous cases have repeatedly held that a brief affair or isolated instances of adultery not shown to have been conducted in the presence of the children are insufficient to deny custody to a mother who is otherwise suitable.
However the mother's conduct here was particularly scandalous and offensive to the sensibilities of the local community in that her lover was of another race. The court has for this reason long delayed its decision. Our laws against miscegenation have been ruled unconstitutional and insofar as the law is concerned the question of race is irrelevant. Accordingly the court is reluctantly compelled to the conclusion that the maternal preference rule requires an award of custody to the mother. However the court will make such custody provisional and subject to the mother's continued good conduct.
[1] In this case the trial court awarded "provisional" custody to the mother subject to her "continued good conduct". But for all practical purposes, here there is no difference between the award appealed from and an award of permanent custody as an award of permanent custody can be changed at any time on a proper showing justifying a need for a change.
[2] Act 448 of 1977 was not effective at the time of trial.
[3] Child Custody: Preference to the Mother, 34 La.L.Rev. 881; The Father's Right to Child Custody in Interparental Disputes, 49 Tul.L.Rev. 189.
[4] Lambert v. Lambert, La.App., 286 So.2d 390; McManus v. McManus, La.App., 250 So.2d 498; Phillips v. Phillips, La.App., 244 So.2d 652.
[5] Johnson v. Johnson, La.App., 268 So.2d 114; Strother v. Strother, La.App., 248 So.2d 867.
[6] 259 La. 1122, 254 So.2d 603.