CUTRER, Judge.
This is a child custody suit involving two children, Casey Fontenot, 6 years of age, and Kelly Fontenot, 3 years of age. Paul Fontenot filed a rule for a change of custody against his former wife, Marilyn Faye Fontenot. The trial court changed custody from Marilyn Faye to the maternal grandparents, Mr. and Mrs. Sidney Johnson. The Johnsons were not parties to the suit. Paul Fontenot, defendant, appeals and Marilyn Faye Johnson Fontenot Read, plaintiff, answers the appeal seeking to have the trial court judgment amended to award custody of the minor children to her or, in the alternative, contends the trial court should be affirmed. We reverse and place the children in the custody of their father.
The parties to this suit originally separated in August 1975. The judgment of separation awarded custody of Casey to Marilyn Faye. The couple reconciled and the second child, Kelly, was born. In May 1977, Marilyn Faye obtained a judgment of divorce on the grounds of adultery and was granted *791 custody of her two minor children. Paul did not contest the custody.
In June 1979, the Ville Platte City Court, sitting as Juvenile Court of Evangeline Parish, granted temporary custody of the children to the maternal grandparents, Mr. and Mrs. Sidney Johnson. In February 1980, the court transferred custody to the Department of Health and Human Resources. The following month, the City Court placed the children in the care of their father, leaving legal custody in the State until trial of the rule to change custody in the district court. The district court found that the orders of the Juvenile Judge of the City Court of Ville Platte were of no effect. This ruling is not made an issue on appeal.
After filing the rule for custody, Paul Fontenot filed a motion to have Mr. and Mrs. Sidney Johnson made defendants in the rule. This proceeding was not served on the Johnsons and they filed no answer. They never became parties to this suit.
The trial judge found that Marilyn Faye was unfit for the serious obligation of rearing the two children. He found that Paul was not as unfit a parent as Marilyn Faye but stated that he was also unable to have custody and control and his children.
The two basic issues presented on appeal are the fitness of the parents, Paul and Marilyn Faye, and, secondly, whether the trial court was authorized to grant custody of the children to the grandparents who were not parties to the suit.
On the issue of the fitness of the mother, Marilyn Faye, we readily agree with the trial court’s conclusions that Marilyn Faye was unfit to retain the custody of the children. In his reasons for judgment, the trial judge made the following observations in this regard:

“There is no doubt that the character of Marilyn Faye Johnson Fontenot Read leaves much to be desired. She has been fired from several jobs as a practical nurse for various infractions of hospital rules. She admitted candidly to taking drugs. She also admitted living with three different men in the last two years, and associating with disreputable individuals. She has recently married one Alan Read, who is about 25 years old, and who until recently apparently had never worked for a living. He testified that he has interests which bring him about $400 to $600 per month. He now claims to have a job paying $1000.00 a month plus commission.

* >|t * * * *
“.. . Marilyn Faye Johnson Read is unable to adequately take care of her children, and is, at the present time, unfit for this most serious obligation.”
The evidence fully supports these findings. The record reflects that Marilyn Faye has been terminated from employment as a nurse in several instances.. She was terminated from the Ville Platte General Hospital for what was termed a critical offense. She was fired from other hospitals for not reporting for work. During a period of four and one-half months she worked no more than thirty-five days.
Marilyn Faye’s private life exhibits less stability than her career. Her address at the time of trial was 130 Melrose Street, Lafayette, Louisiana. According to the testimony of Paul she had moved at least six times within the year preceding the hearing. It is difficult to glean from the record the precise sequence of Marilyn Faye’s residences. Before returning to Lafayette for the custody hearing she was residing in Sedonia, Arizona. Before that her testimony indicates that she was living in Lafayette with a boyfriend and before that she lived on Hickory Street in her own house across the street from her parents. Prior to that she lived on Chataignier Street in Ville Platte with a Hugh Bordelon. Bordelon’s testimony is that the majority of the time that he and Marilyn Faye lived together, they resided across the street from her parents on Hickory Street. He further indicates that they lived together in Lafayette for several weeks. Marilyn Faye’s testimony also reveals that she has lived with a man named Steven Bradley in Lafayette as well as with a friend named Carolyn Fon-tenot. She left Louisiana in November *792 1979 with Alan Read with whom she lived while she was in Arizona. She married Read on February 25,1980, just prior to the hearing and after she had become pregnant by him.
Regarding the children, Marilyn Faye has not hesitated to shift her responsibilities to her parents. Upon leaving for Arizona she left Casey and Kelly with their grandparents without telling Mr. and Mrs. Johnson where she was going. The children stayed in Ville Platte for about six weeks while she was in Arizona. She called home frequently but her parents did not know how to get in touch with her. While traveling to Arizona, she led them to believe she was in Lafayette. Upon one occasion, while she was living with Bordelon, she went out with some friends, leaving the children in his care, and didn’t return that night. Upon finding her still gone the following morning, Bordelon brought the children to the grandparents’ home since he was on call for his job and may have had to leave at any time. Bordelon also testified that during the five or six weeks Marilyn Faye spent in Lafayette with him, the children were with them only two or three weeks. The children also spent large amounts of time with their grandparents even when Marilyn Faye lived in Ville Platte.
Marilyn Faye has a serious drug problem. She admitted this in her testimony. She used amphetamines, barbituates and marihuana. She not only ingested these drugs orally but would dissolve Desoxyn in a spoon and then inject it into her arms and hands. She stated that she had been to a rehabilitation center in Lafayette and was getting away from the drug scene.
While there are some encouraging signs that Marilyn Faye may become more settled and responsible, we do not think that any of these recent changes she claims to have made are of sufficient duration to be relied upon as a basis for judging the type of home she could provide for these two children. Agreeing with the trial court that Marilyn Faye is unfit to have custody of these children, we turn to an examination of the father, Paul Fontenot.
Paul has been steadily employed with the United States Postal Service for the last six years. His superior, Donald Frith, testified that Paul is a conscientious, honest and hard working employee. Paul has, however, had problems in the past.
In 1975, Paul voluntarily committed himself to Central Louisiana Hospital after his separation from Marilyn Faye. He testified that he was suffering emotional problems in trying to adjust to the return to a single life and that he missed his son badly. He remained at the hospital for only a short time.
Paul admitted to having used drugs in the past but stated that he has not done so for the past four or five years, and had only rarely ever done so. He testified that he drinks occasionally but he has never had a serious drinking problem. Mrs. Raoul Fon-tenot, a frequent baby-sitter for Marilyn Faye, testified that, on one occasion, Paul came to pick up the children while he was drunk. His boss, however, testified that he has never known Paul to be intoxicated on the job and his present wife, Vickie, denies that he drinks to excess.
Another accusation leveled against Paul is that he is violent. He admits to having struck his first wife, Marilyn Faye. She said that he had hit her twice and that one of those times he dislocated her jaw. Vickie, to whom he has been married since August 1978, denies that he ever hit her. She was, however, admitted to the hospital with bruised ribs. The hospital records reflect that she told the hospital employees that Paul had beaten her. Polly Williams testified that after Vickie’s ribs were bruised, Vickie told her that Paul had knocked her around. On the stand, Vickie said that she and Paul collided as they tried to go through a door at the same time and that as a result she fell and bruised her ribs on a stool she struck while falling. She said that she and Paul had been arguing but that he had not hit her intentionally.
There is also testimony by Hugh Borde-lon, Marilyn Faye’s ex-boyfriend, that Casey returned from a visit with Paul with a black eye. There is nothing in the record *793 indicating the cause of the black eye. Vickie testified that Paul never hit any of the children, either his or hers, in her presence.
Vickie, Paul’s second wife with whom he was living at the time of the hearing, is a registered nurse. She had been working at Savoy Memorial Hospital in Mamou for about eight months at the time of the hearing. She lost custody of her two children to their father at a time she was single, unemployed and living with her parents. In making the change, in custody, the trial court in that case pointed to Victoria’s religious views as being detrimental to the interest of the children.
There has, however, been nothing brought out in the present suit to indicate that Vickie Fontenot’s religious views could be detrimental to the children. The testimony indicates that Vickie considered herself to be a non-denominational Christian. She has sought guidance from various clergymen of various faiths in her study of scripture and, as far as the children are concerned, she tries to teach them right from wrong.
Another incident pointed to by opposing counsel is Vickie Fontenot’s having overdosed on tranquilizers in June 1979. Both she and Paul testified that the overdose was accidental. The tranquilizers were prescribed medication given because of nervousness and depression over the serious illness of her father and trouble with her brothers over how to handle the situation. The hospital records indicate that she apparently had an argument with Paul and at that time was not thinking properly and ingested approximately twenty or thirty pills. Then, upon taking the medicine, she realized she had made a mistake, took some salt water and tried to expel the contents, but was unable to do so. According to her testimony she then asked Paul to take her to the emergency room.
We have thoroughly reviewed the record, realizing that, upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). We have no problem agreeing that Marilyn Faye is unfit for the custody of these young children. We do conclude, however, that the trial court was clearly wrong in its determination that Paul, at the time of the hearing, was “unable to have the care, custody and control of his children.”
While Paul and Vickie both have evidently had some emotional problems in the past, they have been married for one and one-half years and they testified that they are happy together. They have a home and both have stable employment. They also have someone who will care for the children when they are both working. They have a recent history of stability and responsibility and, with a combined income of over $30,-000.00 annually, are well able to provide for the children. The children were in their custody from February 25, 1980 until the day of judgment, May 13,1980, and there is no indication that their care was improper.
Under these circumstances, we conclude that Paul has not forfeited his right to custody, nor did the evidence show that Paul was unfit or unable to provide a home for the children.
Having come to this conclusion, it is not necessary to decide the issue of whether the trial court had authority to award custody to the grandparents who were not parties to this action. Assuming that the trial judge had such authority, the custody of the children must still be awarded to the father, Paul.
Paul, the father, has a paramount right to the custody of the children, as he has not forfeited his paramount right to custody by being unfit or being unable to provide a home for the children. Deville v. LaGrange, 388 So.2d 696 (La.1980).
We, therefore, conclude that the trial court’s award of custody to the grandparents must be reversed and that the custody of the two children shall be placed with Paul Fontenot, the father.
*794 For these reasons, the judgment of the trial court is reversed and it is ordered that the children, Casey Paul Fontenot and Kelly Nicole Fontenot, be placed in the custody of the father, Gary Paul Fontenot. All costs are to be borne by defendant-in-rule-appellee, Marilyn Faye Johnson Fontenot Read.
REVERSED AND RENDERED.