383 So.2d 808 (1980)
Craig DICKEY
v.
Corinne Womack DICKEY.
No. 13166.
Court of Appeal of Louisiana, First Circuit.
February 25, 1980.
Patsy Jo McDowell, Baton Rouge, for plaintiff-appellee Craig Dickey.
Donald G. Cave, Baton Rouge, for defendant-appellant Corinne Womack Dickey.
Before EDWARDS, LEAR and WATKINS, JJ.
EDWARDS, Judge.
Corinne Womack Dickey appeals a trial court judgment awarding the permanent care, custody and control of her ten year old son, Bradley Craig Dickey, to his father, Craig Dickey, plaintiff-appellee herein. We affirm.
Appellant's only specification of error is that the trial court, in granting her husband a separation from bed and board on the basis of Mrs. Dickey's adultery, erred in awarding custody to the father. Failure to properly apply the maternal preference rule and incorrect evaluation of the facts are urged as the bases for the trial court's allegedly erroneous judgment.
This court finds both contentions to be incorrect.
LSA-C.C. Art. 157 provides the statutory authority for custody awards. As amended *809 by Act 448 of 1977, Art. 157 read in pertinent part:
"A. In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children."
Act 718 of 1979, effective September 7, 1979, amended this provision. It now reads:
"A. In all cases of separation and divorce, and changes of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children, without any preference being given on the basis of the sex of the parent."
Appellant cites Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), for the maternal preference rule. In that case, the Supreme Court held:
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children.. . .
(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable,...."
The maternal preference in Fulco was simply a rebuttable presumption that custody should be awarded to the mother provided she was not morally unfit or otherwise unsuitable. "Otherwise unsuitable" allowed custody to be denied the mother for any valid reason in addition to moral unfitness.
That the truly essential determination is the child's best interest has been ruled in many cases. Delatte v. Delatte, 358 So.2d 974 (La.App. 1st Cir. 1978); Stevens v. Stevens, 340 So.2d 584 (La.App. 1st Cir. 1976); Franklin v. Franklin, 338 So.2d 1199 (La. App. 3rd Cir. 1976). In Stevens, the court held:
"The maternal preference rule is explanatory of, rather than distinct from, this general principle (of awarding custody in the child's welfare and best interest) and, in most cases, follows naturally therefrom."
Even the rebuttable presumption, which once favored the mother, has been swept away by both Art. 157 as amended in 1979 and the jurisprudence.
In Hegan v. Hegan, 367 So.2d 147 (La. App. 2d Cir. 1979), the court noted that while a child's close bond with the mother was a factor to consider,
"this particular factor should not be so great as to only be overcome by a showing on the part of the father that the mother is unfit or unstable. Furthermore,... this same factor could also weigh in favor of the father."
Spencer v. Talabock, 370 So.2d 684 (La. App. 4th Cir. 1979), held that the 1977 version of Art. 157 "clearly rejected preference in custody determinations based on the sex of the parent(.)"
Thornton v. Thornton, 377 So.2d 417 (La. App. 2nd Cir. 1979), is the most recent case to consider Art. 157. The court found Mrs. Thornton morally fit and not otherwise unsuitable. It nevertheless awarded custody of four children, aged 5 through 14, to Mr. Thornton because he was more fit. Noting the (at that time) not yet applicable 1979 Amendment to Art. 157, the court stated:
"It could hardly be more clear that the legislative intent is to do away with any legal preference or presumption in favor of the mother in custody disputes. The father and the mother stand on equal footing at the outset and the role of the court is to determine the best interest of the child based on the relative fitness and ability of the competing parents in all respects to care for the child.
The legislative amendments do not, however, do away with the real life fact, based on human experience, that it is often, in many if not most family circumstances, in the best interest of young children to be cared for by their mother. This nonmaterial concept remains a factor to be considered, along with many *810 others, and will often compete with more materialistic factors that favor the father. It is correct, however, that this concept does not create a preference or presumption in favor of the mother that must be overcome by proof of the mother's unfitness or incapability."
Clearly, in the present case, Mrs. Dickey's status as the mother was properly only one factor in the trial court's determination of custody based on the welfare and best interests of Bradley Dickey. Fulco v. Fulco, supra.
A careful review of the record convinces us that the trial court made no manifest error in awarding custody.
For two years, Mrs. Dickey has been engaged in adultery. She frequently left the family domicile at night, leaving her husband to care for Bradley. She has stated that she wishes to marry her loverwith whom she has been seen in public. She has fought with her husband, her daughter and her in-laws.
Mr. Dickey has tried to provide a moral, healthy home for a ten-year-old boy. His parents assist him by providing a loving home where Bradley is always welcome to visit. Bradley's education is fostered and encouraged both by Mr. Dickey and his parents. The child's physical, mental and emotional needs are met and his surroundings are stable.
It is noteworthy that William E. Bezdek, the paramour of Mrs. Dickey, is presently married. Under oath, he admitted not only wanting to break up his current marriage to marry Mrs. Dickey, but also that he had committed adultery with eight other partners.
Mrs. Dickey's acts, together with such a prospective stepfather, when contrasted with Bradley Dickey's present environment, made the trial court's custody award an easy determination with which we agree.
Mrs. Dickey urges that her relationship with Mr. Bezdek is not so notorious as the affair in Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979).
In that case, the wife had an illicit affair with a man of another race which lasted four months and occurred in the small, rural area of Vacherie and Kraemer. Widespread gossip and the consequent opprobrium followed. The Supreme Court awarded custody to Mr. Schexnayder.
We need not compare the affairs of Mrs. Dickey and Mrs. Schexnayder. We need only conclude that the trial court made a reasoned and correct award of custody based on all the evidence.
For the foregoing reasons, the trial court judgment is affirmed. All costs of these proceedings, both trial and appellate, are to be paid by Corinne Womack Dickey.
AFFIRMED.