411 So.2d 750 (1982)
Jerry L. COOLEY, Plaintiff-Appellee,
v.
Valerie Diane Vandyke COOLEY, Defendant-Appellant.
No. 8723.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
Writ Granted April 21, 1982.
*751 Robert W. Stratton, Baker, for defendant-appellant.
Edwins & Royer, Robert Layne Royer, Baton Rouge, for plaintiff-appellee.
Before DOMENGEAUX, SWIFT and LABORDE, JJ.
LABORDE, Judge.
This appeal involves the provisional custody of two (2) minor children and an award of alimony pendente lite. The trial court awarded custody to the father, Jerry L. Cooley, and awarded the mother, Valerie Vandyke Cooley, alimony pendente lite for a period of three (3) months. The issues on appeal are whether the trial court judgment awarding custody to the father is in the best interest of the children and whether the trial court erred in limiting alimony pendente lite to a period of three (3) months. From our review of the record, we conclude that the trial judge properly awarded custody of the minor children to the father and further, that he did not abuse his discretion in limiting the alimony pendente lite award to a period of (3) months. Hence, we affirm.
Jerry and Valerie were married in Beauregard Parish on May 29, 1978, and of this union, two (2) children were born; namely Robert and Jason. On May 6, 1981, Jerry filed for a legal separation from Valerie asking for custody of the two (2) children who he alleged were in his physical custody. On May 11, 1981, the trial judge signed an order granting Jerry the temporary care, custody and control of the children, subject to further orders of the court.
On June 24, 1981, Valerie filed a rule to show cause why she should not be granted custody of the children and why she should not be granted $600 per month child support and $500 per month alimony pendente lite. Valerie also asked for an injunction prohibiting Jerry from harming, molesting, harassing, telephoning, or threatening her, her friends or her relatives.
After the hearing on July 21, 1981, the court granted custody of the minor children to Jerry and ordered Jerry to pay Valerie alimony pendente lite for a period of three (3) monthsAugust 1 through October 1, 1981.

CUSTODY OF THE MINORS
Louisiana Civil Code Article 146 provides the applicable law concerning an award of provisional custody. The article provides:
"Art. 146. Custody of children pending the litigation. If there are children of the marriage, whose provisional keeping is claimed by both husband and wife, the suit being yet pending and undecided, it shall be granted to the husband or the wife, in accordance with the best interest of the children. In all cases, the court shall inquire into the fitness of both the mother and the father and shall award custody to the parent the court finds will in all respects be in accordance with the best interest of the child or children. Such custody hearing may be held in private chambers of the judge."
The issue on appeal, then, is whether the trial court judgment granting provisional custody to the father is in the best interest of the children.
The standard of appellate review of custody cases was recently discussed by our Supreme Court in Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). The Court at page 1329 announced:
"This Court has clearly stated that in child custody cases, the procedure for appellate review is to give great weight to the determination of the trial judge, and to overturn a determination only when there is a clear abuse of discretion. Fulco [v. Fulco, 259 La. 1122, 254 So.2d 603], supra; Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). This test is substantially similar to the rule applied by the appellate court, which prevents the upsetting of a trial court determination of fact unless it is "clearly wrong". Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). Under *752 these rules, a conclusion reached by a trial court derived from the facts is entitled to just as much weight as a conclusion that certain evidence establishes a fact."
Armed with this standard of review, we now return to the record.
The trial judge found and the record supports that both parents are morally fit to have custody. The trial judge in lengthy and well articulated reasons for judgment gave the following reasons, reproduced below, for awarding custody to Jerry. Since we cannot improve on the reasons given which are fully supported by the record, we adopt them as our own:
"It appears that for most of 1981 the parties, Mr. and Mrs. Cooley, have had varying degrees of difficulty in their relationship and it ultimately resulted in their separating and Mr. Cooley moving back to Ragley in Beauregard Parish where his family resides and from which he came. Mrs. Cooley is continuing to reside in Baker in East Baton Rouge Parish where she and Mr. Cooley had previously resided, having moved there in connection with his work. It appears from the evidence that there is no family either of Mr. Cooley or Mrs. Cooley in the Baker area. Mrs. Cooley's family lives in other places. Her nearest relative is in Baton Rouge which is very near but she's a young lady, eighteen years of age, and is going to school. Mrs. Cooley has continued to reside in the house that she and Mr. Cooley and the children were living in before the separation. She feels that she can continue to care for these children properly. It is her intent to get back into real estate work. She had started a career in real estate sales. She had obtained a broker's license I believe in April 1981. She stopped working as a real estate agent, I believe she said, after her children were no longer with her. She at some point went to work as a secretary for a company in Baton Rouge. She worked there for approximately one month but gave up that work because she could not concentrate. She said she was concerned again about the children. And at this time she is unemployed but has hopes of getting back into real estate work. Mr. Cooley testified that his work schedule is twelve hours a day, seven days on, and that he is able to, because of where the rig is set up, get to his place of residence which is with his brother and sister-in-law at night or at least at the times when he has worked out of his twelve hour shift. He feels that he, with the assistance of his relatives, specifically his sister-in-law, Mrs. Jeanette Cooley, and his brother, Reginald Cooley, and the aid also of his mother and other members of the family, can take good care of these two small children.
The evidence indicates that to some degree Mrs. Cooley was perhaps neglectful in her care of these children, and I know it is disputed about the matter of ants and diaper rash. I think she concedes that she made a bad mistake with the oldest little boy and the sunburn. The pictures indicate the youngster was burned much worse than a 2½-year-old should be. I know this was not deliberate or intentional. It is the kind of thing that can happen but shouldn't happen to a child of that age. Mrs. Cooley's housekeeping practices, to some extent, leave something to be desired as evidenced by these pictures and by other testimony concerning the conditions of her house at various times. I am not attempting to judge her housekeeping by standards of some idealistic homemaking magazine, for instance, but I do recognize uncleanliness and disorder and disarray and clutter when I see it, and, of course, from the standpoint of those pictures, it would appear that there was a lot of that at the time the pictures were taken. That doesn't mean that Mrs. Cooley is a bad person with reference to those comments. It simply meansand there are a lot of people who don't keep their houses up too much and you can argue about the importance of that on the scale of important things.
I have thought a great deal about the overall situation based on what we are *753 faced with here in the courtroom and the evidence I have heard and I think on the basis of that evidence at this time that it is in the best interest of these children that they remain where they are in the temporary care and custody of Mr. Cooley. I want to say that I am influenced to a large extent by the fact that the evidence makes it very clear that Mr. Cooley, who is working and not always able to be with the children, has the firm support of his family. Mrs. Jeanette Cooley impressed the Court as being a concerned person who is willing to assist and is assisting with the care of these two children. There is no evidence to indicate that the children are not well cared for and are not getting along nicely at this time. There is a lot of reinforcement available if needed. On the other hand, when I think of Mrs. Cooley, and I don't think of this in any kind of a derogatory fashionit just happens to be a fact of lifeshe is over in Baker. There is nothing wrong with that except she doesn't have any support to turn to over there. She is a young woman trying to establish herself. She wants to establish herself in a business career and there is nothing wrong with that, but there is no one closer than an eighteen-year-old sister who is a student in Baton Rouge to turn to for backup help. There is a lady who can keep these children, according to Mrs. Cooley, of course, unfortunately and it may be because of the distance involved, I don't have the benefit of the evidence of the circumstances under which the children could be kept. I have not looked at Mrs. Dickson. I don't know what kind of person she is. I don't know how I would be impressed with her, whether she is a loving, kind, caring person or whether she is somebody that I would feel that maybe she is just in it for a dollar. I don't have the opportunity today to say that I looked at Mrs. Dickson and saw her and said, `Yes, she is a lady who really cares and will take care of these two youngsters if Mrs. Cooley is out and about working,' which, of course, a real estate agent to really be effective has to be available, you might say, all hours of the day and sometimes up in the evenings because people look at homes and apartments after normal working hours. There is nothing wrong with that except that if you have two babies at home, there is a problem about making arrangements for their care. I have not, again, had the benefit of hearing anything from witnesses who are able to support Mrs. Cooley in her efforts to get the children and to assure the Court of an ability to care for them under proper conditions. I'm having to determine this on the basis of the evidence that has been presented to me, again I reiterate.
I'm not unmindful that these are very young children and that Mrs. Cooley is their mother. But I have already said, the maternal preference rule has been abolished in this state. It is a factor that I frequently think about and I thought about it in this case. I would like to say that the maternal preference rule is historically based on the concept that where a father is out working, beating the bushes trying to make a living for his children and his spouse who is at home taking care of the children twenty-four hours a day, that it is easy to conclude that under those conditions the mother is the natural custodian. But in our modern society when the wife is out equally beating the bushes and attempting to make a career and a living and is not with the children any more than the father might be, then there is no practical reason for a maternal preference rule. They both, through their physical union, gave life to the children. I suppose the fact that under our present standards and present ideas and concepts about the equality of the sexesand I certainly have no quarrel with that, I think it is the proper thingbut if it is inconsistent to urge one thing, the wife should have the same opportunity to work outside the home and to make a career but, on the other hand, to say, `Well, because I am the mother of the child, I gave birth to the child, notwithstanding the fact that I am working outside the home, nevertheless *754 I should have the children because I actually physically gave birth to the children.' I think that's what the law is trying to eliminate, that type of inconsistency in abolishing the maternal preference rule.
This is not an easy decision for me to make. I take no pleasure whatever in at this time depriving Mrs. Cooley of the custody of the children. But based on what I have heard, that is my decision."

ALIMONY PENDENTE LITE
Valerie urges error of the trial court in limiting alimony pendente lite to a period of three (3) months.
The applicable law is set out in LSA-C.C. art. 148, which provides:
"Art. 148. Alimony pendente lite. If the spouse has not a sufficient income for maintenance pending suit for separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse."
In making an award for alimony pendente lite, the court must take into consideration the needs of the claimant spouse and the means of the other spouse. The actual needs for the maintenance and support of the claimant spouse must first be determined, and if the amount needed is proportionate to the other spouse's means, that amount should be awarded. If needs exceed the ability to pay, then alimony pendente lite should be fixed at a sum which will be just and fair to both parties involved. Frederick v. Frederick, 379 So.2d 808 (La.App. 4th Cir. 1980); Shepard v. Shepard, 334 So.2d 745 (La.App. 3rd Cir. 1976).
The fixing of the amount of alimony pendente lite is largely within the sound discretion of the trial judge and his conclusions as to the amount of the award will not be disturbed on appeal unless there has been a clear abuse of discretion. Douglas v. Douglas, 385 So.2d 402 (La.App. 1st Cir. 1980); Gravel v. Gravel, 331 So.2d 580 (La. App. 3rd Cir. 1976); Bernard v. Bernard, 300 So.2d 499 (La.App. 3rd Cir. 1974); Vidrine v. Vidrine, 402 So.2d 793 (La.App. 3rd Cir. 1981), and Manning v. Manning, 406 So.2d 285 (La.App. 3rd Cir. 1981).
Valerie testified that she held a real estate brokers license and had in fact been involved in the sale of real estate in the Baker, Louisiana area. In addition, she had held a clerical job for a period of time, but voluntarily quit because she could not concentrate due to the pending separation and custody litigation.
In his reasons for judgment the trial court held:
"The Court is going to grant Mrs. Cooley alimony pendente lite in the amount of $400.00 a month for a period of three months beginning August 1st, continuing September 1 and October 1, 1981, in order to help her get rehabilitated and back into her employment. She voluntarily gave up a job and that could be sufficient justification for the Court to conclude she shouldn't be given any support, but I am going to give her $400.00 a month, Mr. Cooley, and I order that she be paid August 1, September 1, and October 1. If there is any further support involvement that would have to come back before the Court in some other fashion later on."
A review of the entire record and the respective incomes and expenses of the litigants in light of the statutory authority and its judicial interpretation does not establish that there has been any abuse of discretion on the part of the trial judge in making the alimony pendente lite award to Valerie. See Desormeaux v. Brignac, 408 So.2d 32 (La.App. 3rd Cir. 1981).
For the above and foregoing reasons the decision of the trial court is affirmed at Valerie Vandyke Cooley's costs.
AFFIRMED.
DOMENGEAUX, J., dissents and assigns reasons.
*755 DOMENGEAUX, Judge, dissenting.
Mine may be a lone voice crying out in the wilderness. I say that because it may appear that I have not given great weight to the factual conclusions of the trial judge. I have tried hard to conform to this cardinal principle of appellate review, but try as I may, I am haunted with the belief that the able trial judge, confronted with the vicissitudes of the new law which abolishes maternal preference in custody matters, granted custody to the father under circumstances which I believe make his decision manifestly erroneous. Judges and attorneys are in a quandry to reach the right decision and to give the right advice, respectively, when conflict develops between fathers and mothers for custody. In view of the abolition of the age old maternal preference rule, I feel that this case may be one which would warrant the granting of a writ by the Louisiana Supreme Court so that guidelines may be set out for the bench and bar in determining the proper criteria for the award of custody in these domestic squabbles.
The toddlers in this case are two and one-half years and one year, respectively. The father is an oilfield driller and works seven days on and seven days off. My review of the record leads me to no other conclusion but that these two children will be raised intermittently by the paternal grandmother, the father's brother and sister-in-law, and other members of his family. A well entrenched legal proposition in our law is that, in the absence of unfitness, a parent has custody priority over a non-parent. There is certainly no unfitness on the part of the young mother here, hence, I submit that the custody award in this case is contrary to that well recognized legal proposition.
I find greatly significant in this case the fact that the father and all of his relatives recognized that the mother was a pretty good housekeeper and a good mother. Then, all of a sudden when the father decided that he wanted custody, they turned the tables on the young mother. The mother admitted that on one occasion she allowed the children to be over-exposed to the sun; however, it is difficult for me to perceive that custody should be taken away from her on account of this isolated incident. All members of the family liked to swim, and they swam a lot. The particular incident was not of a nature to indicate serious neglect. I am satisfied, by the mother's testimony that this would not happen again.
The mother emphatically stated that when the two babies were taken by the father that they did not have sores from ant bites, and she strongly suggests that the children had a rash of some sort which was not caused by ant bites. The one instance of the younger child having a diaper rash does not shock me to the point of depriving a mother of custody for that reason. Anyone who has raised children knows that diaper rashes occur and in most instances are not the result of neglect.
The mother strongly suggests that the photographs taken by the father and members of his family when they broke into her residence in Baker were rigged and that the disheveled condition of the dishes and trash were staged.
We must bear in mind that when the parties herein separated they were living in Baker, Louisiana. The father took the children with him eventually to Beauregard Parish, his home. I gather that the main reason that the trial judge granted custody to the father is because the mother lived alone in Baker, Louisiana, and had no family to help her raise the children. The mother testified that she was trying to get established in the real estate business. A review of her testimony indicates her to be a bright young woman of some twenty years. She also indicated that she had a lady to babysit her children while she worked. This is certainly not an unusual situation.
When all is said and done I can see no good reason not to grant custody of these babies to their mother. I agree with the comments of my brothers of the Second Circuit when they spoke on the mother versus father situation in custody matters as follows:

*756 "`The legislative amendments do not, however, do away with the real life fact, based on human experience, that it is often, in many if not most family circumstances, in the best interest of young children to be cared for by their mother. This nonmaterial concept remains a factor to be considered, along with many others, and will often compete with more materialistic factors that favor the father. It is correct, however, that this concept does not create a preference or presumption in favor of the mother that must be overcome by proof of the mother's unfitness or incapability.'" Thornton v. Thornton, 377 So.2d 417 (La.App. 2nd Cir. 1979).
I believe that the temporary custody of these toddlers should be awarded to their mother. Such being the case, I would then proceed to pass upon the correctness of the alimony award and additionally to consider a proper child support award.
I respectfully dissent.