422 So.2d 572 (1982)
James Dewey SUIRE, Plaintiff-Appellant,
v.
Christine Marie JAGNEAUX, Defendant-Appellee.
No. 82-204.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
*573 Michael L. Schilling, Jr., Abbeville, for plaintiff-appellant.
Michael L. Thibodeaux, Scott, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
GUIDRY, Judge.
This is a child custody proceeding. The father, James Dewey Suire, appeals from a judgment awarding custody of his child, Jason Raily Suire, to the mother, Christine Marie Jagneaux Faul.
James Dewey Suire and Christine Marie Jagneaux were married on October 29, 1976. The only child of their marriage, Jason Raily Suire, was born on July 6, 1979. In March of 1980, the couple physically separated and by agreement of the parties appellee assumed physical custody of Jason. She retained custody of the child until April 5, 1981. The testimony regarding the quality of care she gave to Jason during that period of time is conflicting. The appellee, Mrs. Faul,[1] testified that she cared for Jason for most of the year, and that he stayed with his father only when she was financially unable to pay his babysitter or doctor bills. She testified that Mr. Suire never of his own will came to pick the child up for visits, that he came only when she called him asking him to pick Jason up. Mrs. Faul further testified that Jason did not receive proper care during those periods of time he spent with appellant at his parents' home. She alleges that the child's medical needs were neglected, and that the child, who at the time was less than 2½ years old, spent an inordinate amount of time in a lounge owned by Mr. Suire's parents. She asserts that bringing Jason into the lounge is a bad influence on a child of such tender years.
Mr. Suire alleges that appellee was emotionally unable to properly care for Jason during the year in which she had physical custody. He testified that from time to time she would call him to have him pick Jason up and that other times, she would simply drop the child off to stay with him with no prior notice. He further testified that on one occasion he picked Jason up at a babysitter's home when the babysitter had not heard from appellee for a week, and that he kept Jason for another two weeks before she found out that he had the child. Mr. Suire alleges that his failure to visit the child during the time appellee had custody was due to the fact that she refused to tell him where she was living.
When Mr. Suire first contacted an attorney in order to file for divorce, he and the appellee had decided that she would be awarded permanent custody of Jason. However, before the petition could be filed, she asked Mr. Suire to assume custody because she was unable financially and emotionally to handle the child. Thereafter, Mr. Suire had his attorney redraft the petition to reflect the intention of the parties that he be awarded permanent custody of the child. On April 5, 1981, appellee delivered custody of the child to appellant and signed a waiver of service acknowledging receipt of the petition for divorce. On April 7, the petition and waiver of service were filed, and on April 24, a preliminary default was entered. On April 30, 1981, a default judgment was signed, granting the appellant, Mr. Suire, a divorce based on the couple's living separate and apart for one year, and awarding him permanent care and custody of the child, Jason Suire.
*574 The testimony was also in conflict with regard to a meeting between the parties which occurred on April 30, 1981, just prior to confirmation of the default judgment of divorce. Mrs. Faul testified that the two met alone in the office of Mr. Suire's attorney, and that Mr. Suire agreed that once appellee was in a better financial position, she could once again have custody of Jason. Appellant testified that he made no such promise, that he only agreed to consider returning the child to the appellee once she was in a better position.
On December 3, 1981, the appellee filed a rule to change custody based on Mr. Suire's alleged neglect and disregard for Jason's well being. After a hearing on the rule, the trial judge rendered judgment in favor of Mrs. Faul awarding her custody of the child. This is the judgment before us on review.
The first issue to be resolved is whether the trial judge applied the proper criterion in changing custody from the father to the mother. Our review of the record and the trial judge's reasons for judgment convinces us that he did not. The trial judge based his judgment, in large part, on the meeting that took place between the parties just prior to the rendition of the judgment of divorce. He expressed great concern that appellee was not represented during the divorce proceedings by counsel. He felt that had appellee been represented, the agreement to return custody to her once her condition improved would have been stipulated and made part of the record. He relied on jurisprudence which holds that when a mother surrenders a child because of health or economic reasons and not because she is unworthy, on the condition that she would have custody once she becomes able, she may regain custody once her condition is improved. See Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972).
The law applicable in this and all other child custody cases is set out in LSA-C.C. Article 157 as amended.[2] The article clearly states that the custody of children is to be determined in accordance with the best interest of the child, with no preference given on the basis of the sex of a parent. Thus, the sole criterion applicable in the case at hand is the best interest of the child. Bordelon v. Bordelon, 390 So.2d 1325 (La. 1980); Cooper v. Cooper, 398 So.2d 171 (La. App. 3rd Cir.1981).
In light of the above, it is clear that the trial judge applied an inappropriate standard in changing custody of the child. Nowhere in his reasons for judgment does he state a conclusion as to which custody arrangement would be in the best interest of Jason Suire. Rather, he stated that he was bound by the jurisprudence regarding a mother's surrender of a child for health or economic reasons, and that he had no choice but to award custody of the child to the mother, since he found her to be financially and emotionally able at the time of trial.
Although the learned trial judge's reasons reflect the application by him of an inappropriate standard in deciding the issue presented, our careful review of the record indicates that the result which he reached is correct.
The legislature has done away with any legal preference or presumption in favor of the mother in custody disputes. LSA-C.C. Article 157 (supra). The father and the mother stand on an equal footing at the outset and the role of the court is to *575 determine the best interest of the child based on the relative fitness and ability of competing parents in all respects to care for the child. Thornton v. Thornton, 377 So.2d 417 (La.App. 2d Cir.1979). However, in our view, although the legislative amendments eliminate the rigid maternal preference rule, this circumstance cannot alter the real life fact, based on human experience, that it is often in the best interest of children, especially those of tender years, to be cared for by their mother. This nonmaterial concept remains a factor to be considered, along with many others, and will often compete with more materialistic factors which favor the father. Thornton v. Thornton, 377 So.2d 417 (La.App. 2d Cir.1979); Deese v. Deese, 387 So.2d 671 (La.App. 3rd Cir. 1980).
In light of the foregoing principles and all the relevant circumstances in this case, we are convinced that it is in the best interest of Jason Suire to remain in the custody of his mother.
It is true that during the year in which appellee had custody prior to the divorce, she was financially and emotionally unable to provide for all the child's needs. During that time, however, she was encountering great difficulty in simultaneously holding a job, attending school, and caring for Jason. Under these circumstances, the fact that this 20 year old mother surrendered custody to the father until her position improved does not reflect negatively on her ability or desire to now provide a good home for Jason.
The record shows that appellee is now remarried, and at the time of trial the couple was expecting their own first child. Appellee's husband treats Jason as if he were his own son. He is providing financial support such that it is no longer necessary for Mrs. Faul to work to support herself and Jason. She is able now to devote all of her time to providing a good home for her family.
The child's father, Mr. Suire, works from 7 a.m. to 5 p.m. daily, often working overtime. In addition, he works every other weekend. During the time in which he had custody of Jason, he paid his sister to babysit Jason while he was at work. While we are convinced that Jason is properly cared for by Mr. Suire and his family, we feel that the amount of time Jason is able to spend with a natural parent is another factor which favors granting custody to his mother.
The trial judge found, and we agree, that both parents are capable of providing a good home for Jason. However, our careful review of the record convinces us that it would be in the best interest of the child to remain in the custody of his mother, Mrs. Faul.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to appellant.
AFFIRMED.
NOTES
[1] Christine Marie Jagneaux was remarried on June 21, 1981 to Richard B. Faul.
[2] LSA-C.C. 157(A) provides: (Subsections (B) and (C) omitted)

"A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, or to both jointly by agreement of both the husband and wife, in accordance with the best interest of the child or children; however, an award of joint custody may be granted only when the husband and wife are both domiciled in the state of Louisiana. If either parent changes his or her domicile to another state, the other may petition for sole custody. No preference shall be given on the basis of the sex of the parent in cases where custody is awarded to only one parent. Such custody hearing may be held in private chambers of the judge."
(Amended by Acts 1970, No. 436, § 1; Acts 1977, No. 448, § 1; Acts 1979, No. 718, § 1; Acts 1981, No. 283, § 1.)