ELLIS, Judge:
This is an appeal by Craig Dickey from a judgment transferring custody of his minor son, Bradley Dickey, to his former wife, Corrine Womack Dickey, now wife of William Bezdek.
Mr. Dickey was awarded custody of Bradley by judgment signed July 10, 1979. The judgment was appealed to this court. Dickey v. Dickey, 383 So.2d 808 (La.App. 1st Cir.1980). In affirming the award of custody to Mr. Dickey we said:
“A careful review of the record convinces us that the trial court made no manifest error in awarding custody.
“For two years, Mrs. Dickey has been engaged in adultery. She frequently left the family domicile at night, leaving her husband to care for Bradley. She has stated that she wishes to marry her lover — with whom she has been seen in public. She has fought with her husband, her daughter and her in-laws.
“Mr. Dickey has tried to provide a moral, healthy home for a ten-year-old boy. His parents assist him by providing a loving home where Bradley is always welcome to visit. Bradley’s education is fostered and encouraged both by Mr. Dickey and his parents. The child’s physical, mental and emotional needs are met and his surroundings are stable.
“It is noteworthy that William E. Bezdek, the paramour of Mrs. Dickey, is presently married. Under oath, he admitted not only wanting to break up his current marriage to marry Mrs. Dickey, but also that he had committed adultery with eight other partners.
“Mrs. Dickey’s acts, together with such a prospective stepfather, when contrasted with Bradley Dickey’s present environment, made the trial court’s custody award an easy determination with which we agree.”
This rule for change of custody was filed by Mrs. Bezdek on November 23, 1981, alleging the following changes in circumstance as a basis for the change:
*1227 “A. That plaintiff presently intends to enter into a second marriage, and plaintiff has stated to defendant and to several other persons in words or in substance that “... Bradley belongs with his mother, (defendant)”, rather than with his new family; defendant avers that it is in the best interest of the child that he live with her and she be granted permanent custody because of the impending marriage of plaintiff and for the reason that plaintiff is unable to discipline and direct the minor as effectively as defendant; plaintiff has conceded to defendant that her disciplinary skills and ability to provide proper care and a proper home are superior to his.
“B. Since the rendition of the Judgment awarding custody of the minor child to plaintiff, defendant has married, and has a wholesome environment in which the minor child can live and defendant’s spouse is very willing to have the minor child in the home.”
The testimony reveals that, since the original award of custody, both Bradley and his father have lived in the home of the paternal grandparents. Some time before the hearing on this rule, Mr. Bon Dickey, the grandfather, of whom Bradley was very fond, died, leaving Bradley, his father and his grandmother living together in her home. Most of Bradley’s day-to-day needs were taken care of by his grandmother. It further appears that Bradley spent a great deal of time during the year, and most of his summers at the home of his aunt and uncle in St. Francisville, Louisiana. Bradley testified that he wanted to move to St. Francisville and attend school there, while living in the home of his aunt and uncle. Bradley, who was twelve years old at the time of the hearing, testified that he wanted to remain in the custody of his father, .and did not want to live with his mother.
It appears from the record that Bradley has been well cared for during the time he has been in his father’s custody, but that most of the burden of caring for him has been carried by his grandmother and his aunt and uncle. Mr. Dickey testified that he had told his former wife, Mrs. Bezdek, that he was going to give custody of Bradley to her, but that he had changed his mind. He further stated that both Mr. and Mrs. Bezdek were nice people and that they had a good home. Other than the findings of the court in the original custody award, there is nothing to the contrary in this record. At the time of the hearing Mr. Dickey’s prospective marriage was no longer in prospect.
In ruling to change custody to Mrs. Bez-dek, the trial judge said:
“The custody of the minor child in question here has previously been awarded to the father. The mother is before the Court with no presumption of preference, the only preference being that which flows from the fact that the Court has heretofore awarded custody to the father and with all things being equal and stability for the child to be much desired and sought and maintained. The child now, a boy of twelve years, has sustained several experiences which no doubt have left scars from these emotionally traumatic experiences. First his father and mother separated, then divorced, and the home was broken. And he went then, after the custody having been granted to the father, he went to live principally with his grandmother and grandfather. That is his paternal grandparents. And his paternal grandfather, with whom he identified and for whom he had great love, died. Then he has sought to establish a relationship with his paternal aunt and her husband and at this time really does just about what he desires with reference to with whom he visits and from time to time stays. If he wants to go to St. Francisville where his paternal aunt and uncle live, he goes. Even though the custody was granted by the court to the father, the father has really not exercised the amount of custody or the kind of custody that is contemplated. The paternal grandmother has exercised considerable influence over him as has his paternal *1228 aunt and her husband, the Ramshurs of St. Francisville. All during this time, of course, the mother has maintained her visitation rights with the child and I don’t think there is any doubt that he does in fact love his mother also. I don’t think there is any doubt about that. What the father has done and what he contemplates doing is to extra-judicially establish a custody — a change of custody contrary to that which was awarded by the court. It is no secret that the boy is planning to go, perhaps the idea originates with him, and his father is certainly going to put it in effect this summer and fall, establish his schooling in St. Francis-ville. I do not believe that that is for the best interests of the child. The mother has a stable relationship, has a stable home for the child and custody is changed to the mother with visitation.”
In all custody cases, the best interest of the child is the primary consideration. Article 157, Civil Code. “Stability and continuity must be considered in determining what is in the best interests of the child.” Johnston v. McCullough, 410 So.2d 1105 (La.1982).
In this case, it is apparent that, although nominal custody rests with the father, he has not exercised the parental control contemplated by the law. The moral objections to the exercise of custody by the mother, which were recited in our first opinion in this case, quoted supra, have apparently been removed. She has married her erstwhile lover, and apparently now enjoys a stable and conventional lifestyle. Mr. Dickey admits that Mrs. Bezdek can provide a good home. Under the circumstances, we find no abuse of discretion on the part of the trial judge in finding that Mrs. Bezdek can provide a more stable and disciplined environment for Bradley and ordering a change of custody.
We find no merit to the specific assignments of error by Mr. Dickey. The preference of the child is only one consideration among many in determining what is in his best interest. In this case, as in any case, it is not determinative and we have found no abuse of discretion. Mr. Dickey also objected to the reception in evidence of tapes of telephone conversations between the parties, which were made by Mrs. Bezdek without the knowledge of Mr. Dickey. No specific authority is cited to support this position. We think the objection goes to the weight rather than to the admissibility of the evidence. In any event, the record amply supports the conclusion reached by the district judge, without consideration of the tapes.
The judgment appealed from is therefore affirmed. All costs shall be paid by Mr. Dickey.
AFFIRMED.