CHEHARDY, Judge.
This matter is before us on an appeal by the father from the dismissal of a rule to change custody of his minor son. The rule was filed by the father and the paternal grandmother, Joyce Lee Eskine. Only the father has appealed.
The court initially granted temporary custody to the father in 1980 following filing of a suit for divorce. Shortly thereafter the child’s mother filed a rule for contempt, alleging that the paternal grandmother had actual custody. Later, in 1981, by consent of the parties judgment was rendered awarding custody to this grandmother.
Shortly thereafter the mother filed a rule to change custody in which she prevailed, and in 1982 the father and paternal grandmother filed the rule to change custody with which we are here concerned. Before the matter came to trial the temporary custody had been granted to the grandmother ex parte “effective immediately” because of representations that the mother was engaging in activities detrimental to the welfare of the child.
Following trial judgment was rendered dismissing the rule, setting aside the temporary custody granted to the grandmother and awarding permanent custody of the three-year-old child to its mother.
It is the position of the appellant that the conduct of his former wife is detrimental to the child and that she is an unfit mother.
Fifteen witnesses testified at the trial. Those testifying on behalf of the husband included his mother, the great-grandmother, a private detective, and relatives or friends. The maternal grandmother testified on behalf of her daughter, as did various friends and co-workers.
These facts are undisputed.
The child’s mother is in her early twenties. She lives with her own mother, Bunny Adams. Mrs. Adams has a dancing school and her daughter teaches at the school. They teach all types of dancing, ballet, tap, social dancing, and exercise classes. In the course of their business they also put on shows at a local night club several times a month. It appears from a newspaper article introduced in evidence that the school has been highly effective in teaching dancing to handicapped children. In other words, the dancing school appears to be well regarded in the community.
Other relatives of Mrs. Adams also live with her but she has ample room for the child and his mother, although as suggested by the child’s mother, her mother’s home may not be as commodious as that of Mrs. Eskine, the paternal grandmother.
The father of the child shares a two-bedroom apartment with another man, so that the child would not have a room of his own. On the other hand, Mrs. Eskine has a four-bedroom home which she shares with her *797 husband and one teen-age son. The little boy would have a room of his own, and she would care for him while his father worked. She is a full-time housewife and could give the child her undivided attention.
In support of his allegations, the husband relies principally on the testimony of his mother and her mother (the great-grandmother) that the child’s actions and language are very vulgar. They described the vocabulary and actions in explicit detail. The child’s mother denies knowledge of the vulgarities and sexual observations reported by the paternal grandmothers, but admitted receiving a note from nursery school about the child’s bad language. We note that the three year old could hardly be said to understand the things attributed to him.
The detective followed the former wife on several occasions, observing her at the night club where she danced and did not leave until 4 or 5 a.m., and saw her on a few occasions go into a house other than her own home at a late hour. He observed the light on when she entered, and later turned off. He left 45 minutes later.
We also note that the detective offered the mother an out-of-town job modeling clothes, but she never took him up on his offer. The trial court did not find the detective’s testimony credible because there was nothing to corroborate his testimony.
Relatives and friends of the father described returning the child to the mother after visitation with his father. He always cried and did not want to return. On one occasion the mother appeared to have passed out on the floor and staggered to her feet when her brother kicked her. The child was observed to have flea bites and bruises from the mother’s dogs that climbed all over him.
There was further testimony that on occasions the mother appeared to be on drugs because her speech was slurred and her eyes appeared half open.
On the other hand the mother’s witnesses testified she suffers from hypoglycemia which caused the physical problems the other witnesses had related to drugs. They knew she took the child to church and observed that he was happy and content in her care.
The most damaging testimony concerning the mother’s fitness appears to be that given by her. She admitted to having sexual relationships with three different men since April 1981, the date when custody was restored to her.
In reasons for judgment the trial court considered the heavy burden on the mover to support his allegations that the mother’s conduct was detrimental and that she was unfit. He concluded there were only inferences and innuendoes. Because the mother’s sexual activities did not take place at home, or in the presence of the child, he did not consider this evidence sufficient to render her an unfit mother.
The essential consideration in custody matters is the child’s welfare and best interest. Nethken v. Nethken, 307 So.2d 563 (La.1975); Hays v. Hays, 365 So.2d 563 (La. App. 1st Cir.1978).
As stated in Thornton v. Thornton, 377 So.2d 417, 420 (La.App. 2d Cir.1979):
“ * * * The father and the mother stand on equal footing at the outset and the role of the court is to determine the best interest of the child based on the relative fitness and ability of the competing parents in all respects to care for the child.”
We are also mindful of the fact that in custody matters the trial court’s decision is entitled to great weight, because it is in a better position to evaluate the child’s best interest due to its overview of the conduct and character of the parties. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Berry v. Berry, 307 So.2d 821 (La.App. 3d Cir. 1975); Malone v. Malone, 271 So.2d 598 (La.App. 1st Cir.1972). This discretion should not be disturbed on review absent a clear showing of abuse. Nugent v. Nugent, 232 So.2d 521 (La.App. 3d Cir.1970).
With these principles in mind, and after a careful review of the record, we find no clear showing of abuse on the part of the trial court.
*798 Therefore, for the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.